G. R. COMMAGERE, Appellant,

v.

Hal ANDERSON, d/b/a Hal Anderson Properties, Appellee.

No. 16929.

Court of Civil Appeals of Texas.

Dallas.

June 23, 1967.

Rehearing Denied July 21, 1967.

James L. Mitchell, Dallas, for appellant.

Charles O. Shields, Harris, Anderson, Henley & Shields, Dallas, for appellee.

BATEMAN, Justice.

The appellant G. R. Commagere appeals from a judgment rendered in favor of the appellee Hal Anderson, doing business as Hal Anderson Properties, for rents claimed to be due under a lease and denying appellant's counterclaim.

## Facts

The parties entered into a lease agreement dated August 29, 1963, whereunder appellee leased to appellant a certain "town house" in Dallas, Texas, for a term of two years at a monthly rental of $595, the rent for the first and last months, in the sum of $1,190, being payable in advance. Appellant deposited the $1,190 with appellee.

The following supplemental agreement appears on the back of the lease, under separate signatures of the parties:

"In addition to the terms of this lease, the following is hereby agreed:

"That the sum of $1190.00 will be held as a deposit on 8611 Town House Row until the first day of October, 1963. If at this time, the Lessee has not sold his home, we shall continue to reserve *this house for Lessee until another party* wishes to lease the property. At such time, the amount of deposit will be returned to G. R. Commegeree."

It appears from the lease as a whole and from testimony of the parties that it was understood that this lease would not become effective unless the appellant's home at 7507 Spring Valley Road was sold by October 1, 1963, and that if it was not sold by that date appellee would have the right to lease the "town house" to "another party," in which event the $1,190 deposit would be returned to appellant.

On November 11, 1963 the parties entered into another agreement in the form of a letter from appellee to appellant, and accepted by appellant, the pertinent parts of which are as follows:

"This letter will serve to formalize our agreement relative to the manner in which you wish to dispose of your residence at 7507 Spring Valley Road and the interim period of your occupancy in the Town Houses. The following, when signed by you, will denote your acceptance and full understanding of this arrangement:

"1. Jerry Commagere and family will move into 8611 Town House Row on or about Thursday, November 14, 1963.

"2. Hal Anderson and his Real Estate staff hereby agree to sell Commagere's residence by all means possible through the medium of newspaper advertising and open house. The price of the house is $69,500.00. * * *

"3. No rent is to be paid by Commagere from the time he occupies the Town House until such time as Anderson sells his home or if the said house is rendered useless by either fire or intervening act of God; thus eliminating it from a ready piece of real estate.

"4. The Anderson Organization warrants to the Commageres that they will list this house in multiple listing at $69,500.00 and will cooperate with all brokers and will hold the house open on week ends in order to make the sale as quickly as possible. Upon the sale of Commagere residence, Jerry warrants to Hal Anderson Properties that he will pay two years of rent at the rate of $595.00 per month in advance. If, however, a second lien or other trade or terms of finance are necessary in order to make the sale, Anderson agrees on a mutual basis with Commagere, to participate equally in what cash funds are available; thus allowing Commagere 'move in' money to fix up

his Town House, as well as allowing Anderson to be paid rent in advance.

"5. It is clearly understood that there is no rent payable on the Town Houses until the date of the sale of Commagere's house."

Shortly after November 11, 1963, the appellant and his family moved into the "town house" and remained in it without paying rent until June 30, 1964. The utility bills were paid by appellee. During this period, appellee and his sales organization tried unsuccessfully to sell appellant's home at the agreed price of $69,500.

On April 1, 1964 appellee wrote a letter to appellant's attorney stating that it was not his intention to ignore his agreement with appellant concerning the latter's occupancy of the "town house" rent free until his home was sold, but indicating that he had been "grossly misled" into making the agreement by not being informed that vigorous attempts had been made by appellant for over a year to sell his home without success, and that appellee thought "the situation should be terminated"; that appellee had not guaranteed that the home would be sold at $69,500, and that he would like to confer with appellant concerning the matter. A carbon copy of this letter was sent to appellant, in which the key to the Spring Valley Road home was enclosed and appended to which was this additional message:

"Enclosed herewith is the key to your residence. In view of the fact that homes comparable to yours are being offered at several thousand dollars less, we see no way possible to get you $63,000 net. We are therefore withdrawing from further activity."

During the months of April and May, 1964 appellee made numerous demands that appellant vacate the "town house," even threatening to discontinue the utilities if he persisted in his refusal to move. On May 29, 1964, appellee wrote a letter to appellant, the pertinent parts of which are as follows:

"Thank you for your May 27th letter in which you acknowledge that you will move from the Town House. We will, as I pointed out to you on the phone, be happy to refund to you any or all of your $1,190.00 security deposit, provided you move by five o'clock on the first of June. Further, we will inspect the house * * * after you have vacated the premises; and should there be only normal wear and tear, you will receive the entire $1,190.00.

"* * * I do not intend to embarrass, harrass, or intimidate you. We are simply making formal demand for immediate possession no later than 5:00 p. m., June 1st of your present premises. After you have vacated the premises and they are left in a state of reasonable wear and tear, you will receive your entire $1,-190.00.

"We did not lease you a town house to include an overgrown German police dog. Further, you are obligated for two years' rent when your house sells, so let's quit playing patsy and get on with the move. The good horse is tired. Let's end this on a friendly note.

"As further stated in my conversation with you, a copy of which is available if you should desire to have same, we plan on immediate legal measures should the foregoing not be acceptable."

On June 23, 1964 appellant's home had still not been sold and appellant and his family continued to occupy the "town house" rent free. On that date, however, appellee filed this suit declaring on the lease of August 29, 1963 and demanding the rent reserved thereby, being twenty-four months at $595 per month, or a total of $14,280, and not even mentioning the agreement contained in the letter dated November 11, 1963. Appellee alleged in the alternative that appellant had occupied the "town house" for seven months; that the reasonable rental value thereof was $595

per month, for which, in the sum of $4,165, appellee sued "on a quantum meruit basis."

On June 25, 1964, two days after the filing of the suit, appellant's home was sold through the efforts of appellee's organization for a sum substantially less than $69,500, and appellee was paid a commission for making the sale. In the meantime, appellant and his wife had been looking at other houses, and on or about June 30, 1964 they purchased another home and moved from the "town house" into it.

On July 17, 1964, appellant filed his answer and counterclaim for the return of his deposit of $1,190. After the relinquishment thereof by appellant, appellee leased the "town house" to one Merwin at $495 per month; and at about the same time reduced the rent on all of the neighboring "town houses" from $595 to $495 per month.

At the conclusion of a nonjury trial, the court rendered judgment for appellee for the sum of $2,200 and denied appellant's counterclaim. At the request of appellant, the court filed findings of fact and conclusions of law. After finding the facts hereinabove related, the court concluded as a matter of law that: (1) appellant "was bound by the terms of the lease and letter agreement for two years after his residence was sold"; (2) that appellant moved from the "town house in violation of said lease agreement"; (3) that appellee should recover "the rental value of said premises for two years less the deposit paid by defendant for rent for two months and less the rental collected by plaintiff at the rate of $495 per month for 22 months"; and (4) that appellant should not recover on his counterclaim.

## Opinion

Appellant's first seven points of error on appeal are, in substance: (1) the judgment is not supported by the findings of fact and conclusions of law; (2) the findings and conclusions of law are not supported in the

pleadings, or (3) by sufficient evidence; (4) the trial court erred in refusing to find ultimate and controlling facts as requested by appellant; (5) the court erred in allowing a recovery on a letter agreement of November 11, 1963 in a suit based on a lease dated August 29, 1963; (6) it was error to allow recovery on the lease of August 29, 1963 because it was conditioned on the sale of appellant's home by October 1, 1963, which condition failed; and (7) it was error to allow recovery under either agreement because (a) both agreements were terminated by mutual consent before any obligation to pay rent arose, and (b) appellee's election to consider the agreements terminated and to re-enter and lease the house to another party relieved appellant of further obligation to pay rent.

■ All of these points, except the fourth, must be sustained. Appellee based his suit wholly upon the lease dated August 29, 1963; yet it appears from the face thereof that the parties never intended for that lease to become effective unless appellant's home was sold by October 1, 1963. When that date arrived and the home had not been sold, the lease was unenforceable by either party unless renewed or rejuvenated in some manner. It had lapsed.

■ The parties evidently recognized this by making the new agreement dated November 11, 1963. Appellee bound himself by the new agreement to give to appellant the use and occupancy of the property rent free for a period of time to end only upon the happening of a certain event, the sale of appellant's home at a price acceptable to him. That price was understood and agreed to be $69,500. By his letter of April 1, 1964, appellee took the position that he was entitled to rescind the agreement of November 11, 1963. He returned appellant's key to him and said he was "withdrawing from further activity." Appellant apparently agreed to such rescission by his letter to appellee dated May 27, 1964. This letter is not in the record but is described in appellee's letter of May 29, 1964 in which

he agreed to refund the entire deposit of $1,190 if appellant would vacate the property by June 1, 1964. Appellant did not vacate the house by that date but did so a month later. Under the circumstances then existing, we do not consider that his doing so can be held to be a violation or breach of any agreement.

■ A careful analysis of the acts of the parties demonstrates, we think, that appellee had no cause of action for rent for two years under either contract. The lease of August 29, 1963 accorded appellee no such cause of action because it was conditioned upon the sale of appellant's home by a certain date and the house was not sold by that date. Appellee had no cause of action under the letter agreement of November 11, 1963 for two reasons: (1) because appellant's liability for rent thereunder was conditioned upon sale of his home, which had not occurred at the time of suit, and (2) the parties had evidently agreed on the rescission of that agreement before the suit was filed.

Moreover, appellee could not demand and receive possession of the house and lease it to others, thus depriving appellant of all the possible benefits of a continuing lease (assuming that a lease was then in effect), and also demand of him the payment of rent thereunder. There was no contract between the parties giving appellee any such right. Walling v. Christie & Hobby, Inc., 54 S.W.2d 186, 188 (Tex.Civ.App., Galveston 1932, no writ); Waggoner v. Edwards, 83 S.W.2d 386 (Tex.Civ.App., Amarillo 1935, writ ref'd); Henson v. B & W Finance Co., 401 S.W.2d 261, 264 (Tex.Civ. App., Tyler 1966, no writ). Therefore, appellant's points of error Nos. 1, 2, 3, 5, 6 and 7 are sustained.

Appellant's sixth point of error was also based on the ground that the lease of August 29, 1963 was "novated" by the letter agreement of November 11, 1963; and in his seventh point of error he asserted that the conduct of appellee constituted an eviction of appellant from the "town house." It

is not necessary for us to pass on either of these contentions. We sustain the points on the other grounds heretofore stated.

■ His fourth point of error, complaining of the court's refusal to find additional facts as requested, is overruled because such refusal is not made the subject of a bill of exceptions. Steppe v. O'Day, 315 S.W.2d 599, 603 (Tex.Civ.App., Waco 1958, writ ref'd n. r. e.); Newton v. Highland Park Independent School Dist., 361 S.W.2d 916, 919 (Tex.Civ.App., Austin 1962, no writ); 4 Tex.Jur.2d, Appeal and Error—Civil, § 505, p. 37.

■ By his eighth point of error appellant complains of the denial of his counterclaim, asserting that under the circumstances above related there was no theory of law to justify appellee's retention of the deposit of $1,190. Appellant made that deposit pursuant to the terms of a lease which became lapsed on October 1, 1963. He was entitled to, but did not demand, its return at that time, seeing fit to permit appellee to hold it to appellant's credit during the existence of the November 11, 1963 letter agreement (although it was not even mentioned in that instrument). When that agreement was rescinded by mutual agreement, and appellee demanded and obtained possession of the "town house" and leased it to a third party, there was no legal theory entitling him to retain the deposit.

■ Appellee argues that it would be unjust to compel him to return the deposit of $1,190 in the light of appellant's free use and occupancy of the "town house" for seven months which, at the agreed value of $595 per month, represents a total value of $4,165. Any injustice visited upon appellee by this situation must be held to have had its origin in the agreement of November 11, 1963 prepared and signed by him. Not having been induced to sign that agreement by fraud, accident or mistake, he has no right to ask the courts to relieve him of the burdens thereof. Appellant's eighth point of error is sustained.

For the reasons heretofore stated, we reverse the judgment appealed from and render the judgment the trial court should have rendered, that is, that appellee take nothing by his suit and that appellant have judgment on his counterclaim against appellee in the sum of $1,190, with interest thereon at the rate of 6 per cent per annum from July 1, 1964, and that all costs be taxed against appellee.

Reversed and rendered.