Travis A. TAYLOR, Appellant,

v.

Martha Schmidt TAYLOR, Appellee.

No. 09–82–102–CV.

Court of Appeals of Texas, Beaumont.

Nov. 8, 1984.

Rehearing Denied Dec. 3, 1984.

---

Joe Scott Evans, Groveton, for appellant.

Thomas L. Belanger, Nacogdoches, for appellee.

## OPINION

BROOKSHIRE, Justice.

This is a divorce proceeding wherein Petitioner, Martha Schmidt Taylor, was granted a divorce from Respondent, Travis A. Taylor. Both parties appeal from the judgment ordering a division of certain properties of the parties. A considerable amount of property was divided by the court about which no complaint is made by either party. Martha appeals from the division of the home and Travis appeals from the division of certain other real property.

### Appeal of Petitioner, Martha Schmidt Taylor

The record reveals that the parties were married August 9, 1969. The parties purchased a home in Tyler, Texas, in 1973 with a down payment of approximately $22,-000.00 of which $10,000.00 represented a distribution from the "Schmidt Trust" (hereinafter referred to and discussed in other points of error). The balance of the money invested in this home was community funds. The home in Tyler was sold by the parties on September 26, 1975, and they retained a short-term, second lien note in the sum of $31,556.00 for their equity in the house. This second lien note was payable on October 31, 1975 but was paid early and the proceeds were deposited in the parties account on October 24, 1975.

On October 2, 1975, the parties purchased their home in Lufkin, Texas (this

home being the subject of Martha's appeal). It is undisputed that Travis Taylor, Respondent, had previously received $40,000.00 as a testamentary gift under his deceased father's will. The down payment of approximately $35,000.00 was drawn from the $40,000.00 testamentary gift. The deed to the home recited the conveyance was to Travis Arthur Taylor and his wife Martha Jane Taylor.

The trial court entered a "Judgment Modifying Decree of Divorce", awarding Respondent, Travis Arthur Taylor a "Fifty-six percent (56%) undivided interest" in the home located in Lufkin, and awarded Petitioner, Martha Jane Taylor, "Forty-four percent (44%) undivided interest" in the home.

By her first five points of error, Martha Jane Taylor challenges the legal and factual sufficiency of the evidence to support the award of 56% undivided interest in the home to Travis Taylor.

Petitioner, Martha Jane Taylor, admits in her brief the claim of her husband, Travis Taylor, that the down payment for the Lufkin home was made from his separate property, i.e., the $40,000.00 received from the testamentary gift under his father's will, was based upon "a complicated 'paper trail' of deposit slips, checks and savings account entries compiled by Respondent to establish that the $35,000.00 down payment on the [Lufkin home] originated from a $40,000.00 testamentary gift from Respondent's father." The evidence referred to by Petitioner was introduced into evidence. She does not dispute this tracing and does not dispute the accuracy of the tracing. The trial court filed findings of fact and found, inter alia, that funds, directly traceable to the $40,000.00 testamentary gift, were used in the "payment" of the purchase price of the Lufkin home. There was no direct challenge made to this finding.

■ Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. *TEX.FAM.CODE ANN. sec. 5.02* (Vernon 1975). In order to overcome this presumption, the party asserting separate owner-

ship must clearly trace the original separate property into the particular assets on hand during the marriage. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975). The evidence presented by Respondent clearly traced the down payment made toward the purchase of the Lufkin home into his separate funds, i.e., the $40,000.00 testamentary gift. This fact is supported by the evidence presented, and the findings of the court and is not challenged or disputed by Petitioner. These points are overruled.

■ Petitioner's sixth through fifteenth points complain of error in "failing to find" certain facts and conclusions of law. The trial court made and filed findings of fact and conclusions of law, but did not make the findings about which she now complains. She then filed a request for additional findings as to specific facts. The trial court in making one additional finding of fact did not make a finding as to the other specific findings. These points of error are without merit because Petitioner did not bring forward a bill of exception to the failure of the court to make such findings of fact and conclusions of law. Therefore, Petitioner waived any error in her failure to bring forward a bill of exception. *Pan American National Bank v. Holiday Wines & Spirits*, 580 S.W.2d 7 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.); *Stolte v. Mack Financial Corporation*, 457 S.W.2d 172 (Tex.Civ.App.—Texarkana 1970, no writ); *Commagere v. Anderson*, 417 S.W.2d 875 (Tex.Civ.App.—Dallas 1967, no writ). These points are overruled.

Petitioner, in her sixteenth point, contends the court erred in "concluding that it does not have jurisdiction to order Respondent to repay the funds borrowed from the accounts of the minor children by Respondent and various third parties with Respondent's permission."

The record reveals that the parties' two minor children have received numerous cash gifts from several relatives and from two separate trust estates. These cash gifts were set up in a separate account or

trust fund. From this fund Respondent borrowed money over a period of time for his own use and for the purpose of loaning certain sums to third parties. At the time of the divorce, such outstanding loans amounted to the sum of $61,500.00.

Both parties treat the account or trust fund (the evidence is not clear as to the type of account or fund) as evidencing the money belonging to the children in their own right. Neither party asserts any property rights or ownership in such fund.

■ The $61,500.00 borrowed by Respondent is clearly a debt owed to the children. There is a presumption that a debt created by a spouse during marriage is an obligation of the community. *Mortenson v. Trammell*, 604 S.W.2d 269 (Tex.Civ.App.— Corpus Christi 1980, writ ref'd n.r.e.).

■ The trial court, in making a division of the community estate pursuant to the provisions of *TEX.FAM.CODE ANN. sec. 3.63(a)* (Vernon Supp.1984), has authority to order the payment or disposition of the community debts in its consideration and determination of the division of the community estate. *Janik v. Janik*, 634 S.W.2d 323 (Tex.App.—Houston [14th Dist.] 1982, no writ); *Bourne v. Bourne*, 559 S.W.2d 844 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). The trial court did have jurisdiction over this matter. Respondent, in his brief, states "Appellee [Respondent] does not contest Appellant's [Petitioner] point that the trial court had jurisdiction to allocate the responsibility for the payment of the debt to the children, as between Petitioner and Respondent." This point is sustained.

*Appeal of Respondent, Travis A. Taylor*

Respondent contends in his two points of error that the court erred in "concluding that the 'Creekside Estates' properties and the 'Schmidt Building' rental properties, purchased during the marriage with income distributions from Petitioner's separate property trust, are Petitioner's separate property in that such income distributions, made during the parties' marriage, are community property as they were not acquired by gift, devise, or descent."

■ We agree with Respondent's general contention that the income generated by or from a spouse's separate property is considered as community property of the husband and wife. However, we do not view this general proposition as being dispositive of the question before us.

■ The record reveals that Petitioner's parents created the "Schmidt Trust" naming the Commercial National Bank in Nacogdoches, Texas, as trustee. This "Trust" has been in existence for approximately ten years when Petitioner and Respondent were married. At the time of the marriage of the parties, the "Schmidt Trust" had retained earnings of $62,850.68. The "Trust" made distributions of $161,050.70 of its income or retained earnings to, or for the benefit of, Petitioner during the marriage.

The "Schmidt Trust" was established for the "use and benefit of the respective children of the Trustors, and their lineal descendants...." At its inception, the sole Trust asset was an undivided interest in Schmidts, a ladies' ready-to-wear store in Nacogdoches, Texas. This asset did not consist of any realty, but only the business enterprise known as Schmidts ladies dress wear store.

The business known as Schmidts "is conducted in two certain buildings, one owned by Miss Emily Lee and one owned jointly by Henry P. Schmidt [Petitioner's father] and John Louis Schmidt, the assets of which business consist of cash, furniture, fixtures, delivery equipment, accounts receivable and merchandise inventory and burdened with the obligations shown in the attached statement ...." Petitioner, by the terms of the trust agreement, was the beneficiary of 20% interest "in said business."

During the marriage of the parties, Petitioner, with the earnings distributed from this Trust, purchased realty described as the "Creekside Estates" and the "Schmidt building."

The trial court filed findings of fact and conclusions of law consisting of, inter alia, the following:

8. The parties stipulated that the corpus of the "Schmidt Trust" was the separate property of Petitioner.

9. The "Schmidt Trust" made $161,-050.70 in distributions of its income or retained earnings to, or for the benefit of, Petitioner during the marriage.

. . . .

11. All interest of the parties in the "Creekside Estates" properties and the "Schmidt building" rental properties, both in Nacogdoches, County, were purchased with distributions of income from the Schmidt Trust during the parties' marriage.

. . . .

Based upon the above findings, the court awarded Petitioner, as her separate property, the "Creekside Estates" and the "Schmidt building."

It is necessary for us to make a brief reference to certain provisions of the "Schmidt Trust" agreement in order to place Respondent's contentions in proper perspective.

The Trust agreement provided:

(B) It is the intention of this Trust to place in the Trustee a 40% undivided interest in the retail business herein described as SCHMIDT'S, subject to the following . . . .

(1) A reasonable salary to the present management . . . or to any subsequent management;

(2) "BUY AND SELL" agreement by and between John Louis Schmidt et ux and Henry P. Schmidt et ux; Trustee is expressly authorized to execute the necessary instruments of transfer . . . .

(3) Reasonable rental payments upon the buildings now or that may hereafter be tenanted by Schmidt's . . . .

(4) In order to continue the growth and expansion of said business, management is authorized to create the necessary reserves and make proper additions to capital from earnings before distribution of earnings . . . .

. . . .

(D) . . . We further provide that if the Trustee shall determine, in its sole discretion, that the financial condition of either of the Trustors is such that their respective children might be in need or that income from the Trusts might be needed for the care, support or education for any of said children during their minority, then in that event, the Trustee may, at its election, distribute and pay for the benefit of such child such amounts out of income of the Trust Estate as it may deem proper to the end that said child may receive proper support, care and education. . . . we give to the Trustee the right to distribute the net income at such times and in such amounts as the Trustee it its sole discretion may elect. We further provide that any undistributed income be likewise invested and re-invested, and such investments and re-investments as our said Trustee may select

. . . .

The above quoted terms of the Trust, in addition to other terms not quoted, clearly indicate that the income and profits derived from the operation of the dress shop were a part of the corpus of the trust estate. The trustors specifically directed the disposition of both. They directed the manner in which income, as distinguished from profits, could be distributed under certain conditions. The intention of the trustors clearly show that the income and profits were as much a part of the corpus of the trust as the individual items of personal property used in the operation of the retail business. The mere operation of a dress shop by the trustee, without receiving income or profits, would be of no benefit or value to the beneficiary of the trust. We hold that the income and profits from the operation of the dress shop were not only a part of the corpus of the trust estate, but were the principal assets of the trust. The entire trust agreement contained more specific directions as to distribution of the income and profits than any other items mentioned in the trust agreement.

It was stipulated by the parties that the corpus of the trust was Petitioner's separate property. The trial court found that the "Creekside Estates" and the "Schmidt building" were purchased with "monies directly traceable to the distributions from the Schmidt Trust." This finding has not been challenged by Respondent. The "Creekside Estates" and the "Schmidt building" were properly determined by the court as being the separate property of Petitioner.

The judgment of the trial court is reversed as to the failure to dispose of the $61,500.00 debt owed to the children of the parties and is remanded for a disposition of such debt. The judgment, in all other respects, is affirmed.