**S & D GROUP, INC. and Andy Kim, Appellants,**

**v.**

**J. Anthony TALAMAS, Appellee.**

**No. 13–85–304–CV.**

Court of Appeals of Texas, Corpus Christi.

April 17, 1986.

Rehearing Denied May 22, 1986.

Hector Leal, Laredo, Johnathan David Pauerstein, San Antonio, for appellants.

R.E. Sames, Laredo, for appellee.

Before NYE, C.J., and DORSEY and BE-NAVIDES, JJ.

## OPINION

DORSEY, Justice.

This is an appeal from a judgment and award of damages in a suit arising from an alleged breach of a lease of commercial property. Appellants' first two points of error allege that the jury findings are immaterial and have no support in the evidence. The third point of error complains of the trial court's failure to refund appellants' rental deposit. We sustain appellants' points of error and reverse and render.

S & D Group, Inc., a California corporation, and appellee, J. Anthony Talamas, entered into a written Sublease agreement on July 15, 1982, for retail space in downtown Laredo, Texas. At the time this Sublease was executed, the building in question was under construction and was owned by Mr. and Mrs. J.J. Haynes, who had leased the entire building to appellee, Talamas, in what will be referred to as the "Main Lease." Appellee, in turn, agreed to Sublease one-fourth of the building to appellant, S & D Group, Inc. Appellant Kim guaranteed the performance of S & D, and was the sole stockholder of S & D. The issue is whether the Sublease began so as to entitle appellee/Talamas to rents.

The Sublease provided that its term was to begin "September 1, 1982, or upon the effective date of the Main Lease hereinafter specified, whichever is later, and ending August 31, 1992...." The Main Lease was specifically incorporated into the Sublease. The Main Lease provided:

Term of Lease

The term of this lease shall be ten (10) years, commencing on September 1, 1982, and ending on August 31, 1992, unless sooner terminated as herein provided, or started later as herein provided.

In regards to starting date September 1, 1982, Lessor and Lessee agree that if said building is not completed by September 1, 1982, Lessor shall have an additional sixty (60) days until November 1, 1982 to complete said building and have certificate of occupancy issued....

Both the Main Lease and Sublease had provisions making time of the essence in their performance. The Sublease also contained the following sentence with a blank date which was to be "filled in when said

date has been established as aforesaid so that same shall read as follows: 'The rental period shall commence on the *1st* day of *Sept.,* 1982, and shall end on the *last* day of *August,* 1992, subject to the terms and provisions herein contained.' "

Appellants filled in the blanks, as shown, before signing the contract. Appellee later signed the contract as completed. Construction on the building was delayed. Appellee notified appellants of the delays in August of 1982 and every two weeks thereafter, each time representing that the building would be completed in just two more weeks. On December 16, 1982, appellee notified appellants by letter that the building was ready for occupancy. Appellants refused to take possession of the premises and to pay rent.

Appellee, Talamas, sued for breach of the lease, seeking to recover all rents due under it. He contends that the Sublease provided for the possibility of some delay in the commencement date of the lease, as illustrated by the flexible language:

> Sublessor hereby Subleases the demised premises unto the sublessee for a period beginning September 1, 1982 *or upon the effective date of the main lease, whichever is later....* [Emphasis added.]

Appellee's position is that because the leases contemplated that a delay in the construction of the building was a possibility, the December 16, 1982, occupancy date was a timely notice that the building was ready for occupancy and was sufficient to begin appellants' liability for rents. It is appellee's position, therefore, that because the "main lease" did not commence until December 16, 1982, then the Sublease likewise did not commence until that date, pursuant to its specific terms.

S & D Group, Inc. counterclaimed, alleging that because appellee failed to tender possession by September 1, 1982, as provided in the Sublease, appellee breached the lease; and because the Sublease made "time of the essence," appellants' duties under the lease were extinguished by appellee's breach. Appellants also pled entitlement to a refund of their $12,000.00 deposit, plus interest.

The case was submitted to the jury that made the following findings: the parties contracted that the Sublease would commence on September 1, 1982, or upon the commencement of the main lease, whichever was later; the Sublease actually commenced on December 16, 1982; and, S & D Group, Inc. breached the Sublease by failing to pay any rentals to Talamas after the commencement date of the lease. Based on the testimony of both Talamas and a real estate appraiser, the jury also found: past due rentals from December 16, 1982 to December 16, 1983 totalled $60,000; past due rentals from December 16, 1983 to March 16, 1984 came to $15,990; and, future rentals through December of 1992 totalled $46,500. The jury also found that appellants had invested no money for the business operation in the leased premises and had suffered no pecuniary loss due to any breach by appellee. Judgment was entered for appellee in accordance with the verdict for $122,490.00 damages, $12,000.00 attorneys fees, $3,000 for appeal to the Court of Appeals and $2,000 for appeal to the Supreme Court.

Appellants' first two points of error contend that the trial court erred in rendering judgment for Talamas because the sublease provided it would commence on September 1, 1982 or contemporaneously with the start of the Main Lease, which would be no later than November 1, 1982, and expressly made time of the essence; therefore, the jury findings are immaterial and have no support in the evidence. As a basis for this argument, appellants assert that the Sublease was clear and unambiguous as to the period in which the Sublease had to begin as a matter of law and, therefore, there was nothing for the jury to decide.

If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. *Coker v. Coker,* 650 S.W.2d 391 (Tex. 1983); *Corriveau v. 3005 Investment Corp.,* 697 S.W.2d 766, 767 (Tex.App.—Cor-

pus Christi 1985, writ ref'd n.r.e.). If there is no ambiguity, the construction of the instrument is a question of law for the court and a jury may not be called upon to construe the legal effect of the instrument. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968); *Trinity Universal Insurance Co. v. Ponsford Brothers,* 423 S.W.2d 571, 575 (Tex. 1968).

The evidence clearly establishes that the parties did contract for the Sublease to begin on "September 1, 1982, or upon the effective date of the Main Lease hereinafter specified, whichever is later...." The Sublease expressly provided that "Except as as (sic) herein otherwise expressly provided, all of the terms, agreements and conditions in the Main Lease referred to hereinabove ... are hereby made a part of this sublease." The Main Lease by its terms was to begin on September 1, 1982, or, in the event of construction delays, no later than November 1, 1982.

■ When an instrument is incorporated by reference into another instrument, the two are read together and are considered as one. This is true even if the instruments were not between the same parties. *American Petrofina, Inc. v. PPG Industries, Inc.,* 679 S.W.2d 740, 751–752 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.). *See Miles v. Martin,* 159 Tex. 336, 321 S.W.2d 62, 65 (1959); *see also Jones v. Kelley,* 614 S.W.2d 95 (Tex.1981); *Estrada v. River Oaks Bank & Trust Co.,* 550 S.W.2d 719 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). Because the Main Lease was incorporated into the Sublease, it became a part of the Sublease and defined the rights and duties of the parties to the Sublease and to this action. We do not find the provisions pertaining to the starting date in both leases to be inconsistent or conflicting so as to preclude their being read as one agreement.

■ The parties to the Main Lease, Haynes and Talamas, modified it by orally extending the time for commencement of the Main Lease. A contract that is modified by the mutual consent of the parties constitutes a new agreement that takes the place of the original. *Martin v. Davis Constructors, Inc.,* 552 S.W.2d 873, 877 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). However, subsequent changes of the terms of the Main Lease between Haynes and Talamas could not effect the written agreement between Talamas and S & D Group, unless those changes or modifications were later agreed to by S & D Group. "The terms of the original contract cannot be unilaterally remade by one of the parties." *Mandril v. Kasishke,* 620 S.W.2d 238, 244 (Tex.Civ. App.—Amarillo 1981, writ ref'd n.r.e.). To be bound by a contract a party must assent to its terms. Absent a provision in the Sublease that provided that the parties would be bound by subsequent modifications in the Main Lease, or waiver, or some other equitable principle, changes in the Main Lease made after its incorporation into the Sublease cannot affect the rights of the Sublessee. No such provision exists, and the equitable principle of waiver argued on appeal was neither plead or proved at trial nor submitted to the jury and is, therefore, deemed waived. TEX.R.CIV.P. 279; *see Akin v. Dahl,* 661 S.W.2d 911, 913 (Tex.1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460.

■ We agree with appellant that the provisions of the Sublease when considered together with the provisions of the Main Lease that were incorporated by reference, allow only one interpretation: the Sublease would begin on September 1, 1982, or no later than November 1, 1982. Because the instrument was not ambiguous nor was there an evidentiary dispute that possession was tendered to the tenant-appellant after November 1, 1982, upon completion of the building, there were no material issues to submit to the jury.

Appellant's third point of error complains that the trial court erred in refusing to refund appellant's $12,000 security deposit, which appellant was entitled to as a matter of law.

The Sublease provided that Subleasee would deposit $12,000.00 with Sublessor "as a security deposit, to insure its performance under this sublease agreement, throughout the term of this sublease, payable upon execution of this sublease agreement." The Sublease Amendment executed by the parties stated that the security deposit "shall include and be applied to the first month's rental in the amount of Five Thousand Five Hundred Dollars ($5,500.00). The balance of said deposit, in the amount of Six Thousand Five Hundred Dollars ($6,500.00) shall be applied to the last month's rental under said sublease agreement, same being August of 1992."

 The security deposit was intended to secure the tenant's performance of the Sublease Agreement. As the Sublease never took effect, the tenant/appellant did not breach it. The appellant is entitled to a refund of the security deposit. *Commagere v. Anderson*, 417 S.W.2d 875 (Tex.Civ. App.—Dallas 1967, no writ).

Appellant's third point of error is sustained.

The judgment of the trial court is REVERSED AND RENDERED that the appellee, J. Anthony Talamas, take nothing against appellants, S & D Group, Inc. and Andy Kim, and that appellant S & D Group, Inc. recover from J. Anthony Talamas $12,000, plus accrued interest and costs.

NYE, Chief Justice, concurring.

I respectfully concur with the majority's opinion in this cause. However, I find the majority's disposition of appellants' third point of error, and subsequently, our judgment, to be incomplete. In sustaining appellants' third point of error, the majority held that the appellant was entitled to a refund of the $12,000.00 security deposit. While I agree with the return of the deposit, I believe that under the pleadings in this cause, and the record before us, the recovery was based on the contractual relationship between the parties arising out of the lease agreement. In this regard, our opinion should state that we are awarding the return of the deposit to appellants based on the contract between the parties and for no other reason.

Accrued interest should be awarded to the appellant based on the contractual relationship between the parties; otherwise the opinion is incomplete. It is apparent that where the lease agreement is made the basis of the return of the deposit, the date on which interest should run is the earliest date that the lessee was entitled to a return of his deposit. *Commagere v. Anderson*, 417 S.W.2d 875 (Tex.Civ.App.—Dallas 1967, no writ). In this case, that date is November 2, 1982.