In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00007-CV

                                                ______________________________

 

 

                         TONY MILLER, INDIVIDUALLY AND
D/B/A

TONY MILLER RENOVATIONS
& CONSTRUCTION, Appellant

 

                                                                V.

 

                                           GAIL MCCARTY, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 202nd
Judicial District Court

                                                             Bowie County, Texas

                                                      Trial Court No. 08C0269-202

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            Spencer
and Gail McCarty experienced problems with their Bowie County home which
appeared to be caused by flaws in its foundation.  In November or December 2007, Spencer made
contact with a family friend, Tony Miller, doing business as Tony Miller
Renovations and Construction, to repair the foundation.  Spencer died during December 2007 and Gail
contracted with Miller to perform the work, this being the construction of
pilings under the foundation to give added support to the foundation’s
southwest corner.  Upon commencement of
the anticipated repairs, Miller discovered concrete pilings beneath the
foundation which indicated that there had apparently been two previous attempts
to ameliorate the foundation problem. 
Although the existence of these unexpected pilings created more difficulty
than Miller had anticipated when bidding the work, he attempted to work around
them, but was unable to do so.  Various
disputes arose regarding the deposit McCarty was to pay, the existence of an
agreement that more work was needed to lend additional support to the entire
south end of the house, and the existence and impact of an alleged plumbing
leak which Miller maintained was the precipitating cause of the foundation
problems.  As a result of the cumulative
disputes, work on the job ceased with Miller and McCarty blaming each other, McCarty
claiming that Miller voluntarily quit and Miller maintaining that he had been
ordered by McCarty to leave the job site. 

            McCarty
filed suit against Miller individually and as Tony Miller Renovations &
Construction, alleging negligence, breach of contract, and violations of the
Texas Deceptive Trade Practices—Consumer Protection Act (DTPA).  Tex.
Bus. & Com. Code Ann. §§ 17.41–.63 (Vernon 2002 & Supp. 2010).  Miller alleged contributory negligence,
counterclaimed for breach of contract, and pled excuse for his failure to
perform.  After a jury trial, the jury
found:  (1) that both parties were
negligent; (2) that McCarty had been damaged in the sum of $4,700.00 due to
Miller’s nonperformance of the contract; (3) that Miller performed compensable
work of the value of $2,937.50; and (4) that both parties had failed to comply
with the contract; (5) but that Miller’s failure to comply with the contract
was excused.  The issue of attorney’s
fees was submitted to the trial court. 
McCarty submitted attorney’s fees of $18,135.00 and Miller submitted
attorney’s fees of $1,800.00. 

            After
the filing of warring motions for judgment non
obstante veredicto and motions to enter judgment, the trial court entered a
judgment which (1) disregarded the jury’s finding that Miller was excused from
complying with the contract, and (2) after weighing offsets, payments,
attorneys’ fees, and costs of court, awarded McCarty judgment for $18,204.90.

            On
appeal, Miller argues that the trial court erred in disregarding the jury’s
finding that Miller’s breach of contract was excused on the stated basis that
the finding was inconsistent with the greater weight of the evidence.  Miller further contends that because the jury
found that he was excused from performance of the contract, the trial court
erred in awarding McCarty attorney’s fees and recovery for damages. 

            In
her cross-appeal, McCarty contends that:  (1) there is factually insufficient evidence
that Miller and McCarty were twenty percent and eighty percent negligent,
respectively; (2) there is factually insufficient evidence that McCarty failed
to comply with the contract; (3) there is factually insufficient evidence that
Miller’s failure to comply with the contract was excused; and (4) the trial
court erred because it did not award attorney’s fees consistent with the
uncontroverted evidence.

            As
to Miller’s appeal, we reverse the trial court’s order disregarding the jury’s
finding because there is legally and factually sufficient evidence that Miller’s
failure to comply with the contract was excused.  We also reverse the award against Miller for
damages incurred by McCarty and the attorney’s fee award given to her. 

            As
to McCarty’s cross-appeal, we reject McCarty’s argument that:  (1) there is legally and factually
insufficient evidence that McCarty was negligent; (2) there is legally and
factually insufficient evidence that McCarty failed to comply with the
contract; and (3) there is legally and factually insufficient evidence that
Miller’s failure to comply was excused. 

Standard of Review

            The
issues on appeal are the legal and factual sufficiency of the jury findings and
the trial court’s decision to disregard one of those findings.  A trial court may disregard a jury’s finding
only if there is no evidence to support the finding.  Spencer
v. Eagle Star Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex. 1994); C. & R. Transp., Inc. v. Campbell,
406 S.W.2d 191, 194 (Tex. 1966).  In
determining a no-evidence issue, we are to consider only the evidence and
inferences that tend to support the finding and disregard all evidence and
inferences to the contrary.  Bradford v. Vento, 48 S.W.3d 749, 754
(Tex. 2001); Cont’l Coffee Prods. Co. v.
Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Hooper v. Smallwood, 270
S.W.3d 234 (Tex. App.––Texarkana 2008, pet. denied).  

            In
a legal sufficiency review, we view the evidence in a light favorable to the
finding, crediting favorable evidence if a reasonable fact-finder could, and
disregarding contrary evidence unless a reasonable fact-finder could not.  City of
Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  Anything more than a scintilla of evidence is
legally sufficient to support the jury finding. 
Cazarez, 937 S.W.2d at
450.  When reviewing the factual
sufficiency of evidence, we examine all the evidence and set aside a finding
only if it is so contrary to the evidence as to be clearly wrong and unjust.  Bledsoe
Dodge, L.L.C. v. Kuberski, 279 S.W.3d 839, 841–42 (Tex. App.––Dallas 2009, no
pet.); Cameron v. Cameron, 158 S.W.3d
680, 683 (Tex. App.––Dallas 2005, pet. denied).

Legally and Factually Sufficient Evidence Regarding
Miller’s Excuse to Comply with Contract

 

            In
its answer to Question 7, the jury found that Miller’s failure to comply with
the contract was excused.  Finding that
the answer was “inconsistent with the greater weight of evidence,” the trial
court granted McCarty’s motion to disregard the jury’s answer to Question 7.[1]  Miller argues that the trial court erred
because there is sufficient evidence that Miller’s failure to comply was
excused.[2]  Contraveningly, McCarty contends that there
is legally and factually insufficient evidence to support the jury’s finding in
the first place.  

            At
trial, Miller argued that his failure to comply with the contract was excused
because:  (1) he and McCarty agreed that
a new contract would take the place of the original, (2) McCarty failed to
comply with a material obligation of the contract, and/or (3) McCarty repudiated
the contract.  The charge of the court
listed each of these potential excuses for performance in its instructions;
therefore, the jury was permitted under those instructions to find Miller’s
excuse from performance on any one or more possibly inconsistent grounds
without specifying the specific reason.   


            A
contract that is modified or amended by the mutual consent of the parties
constitutes a new agreement that takes the place of the original.  S &
D Group, Inc. v. Talamas, 710 S.W.2d 680 (Tex. App.––Corpus Christi 1986,
writ ref’d n.r.e.); Martin v. Davis
Constructors, Inc., 552 S.W.2d 873, 877 n.4 (Tex. App.––San Antonio 1977,
writ ref’d n.r.e.).

            Here,
the contract called for Miller to repair McCarty’s foundation in three
phases.  It is undisputed that phase one
included the installation of six concrete piers beneath the southwest corner of
McCarty’s residence for a total cost of $4,000.00.  The contract required McCarty to pay Miller
$2,000.00 at the beginning of phase one and another $2,000.00 upon the
completion of phase one.  Shortly after
McCarty paid the initial $2,000.00 and Miller began work, Miller discovered
concrete blocks near the foundation that were apparently part of a previous
attempt to repair the foundation.  

            Miller
testified that after he attempted to work around the previous foundation repair
work, McCarty inquired of him what would be needed to raise the entire south
end of the residence (as opposed to raising only the southwest corner as had
been previously contemplated by the parties). 
Miller advised that this change would require six additional piers added
to phase one of the contract, an action that would elevate the total cost of
phase one by $1,875.00.  Miller also
testified that in order to do the expanded work, he would require one-half of
the additional cost (or an additional $937.50) before he commenced work.  Miller testified that McCarty paid $500.00 of
the $937.50, but failed to pay the remaining $437.50.  

            McCarty
admitted having paid Miller the additional $500.00 which Miller mentioned, but
attributes that additional payment to a very different fact circumstance.  Instead, McCarty testified that Miller
approached her and said he was broke and needed more money and that plea is the
sole reason she paid him the additional $500.00.  McCarty specifically denied requesting that
Miller add more piers and, by implication, denies modifying or amending the
original contract in any way.  

            The
conflicting evidence raises a fact issue as to whether a new agreement was made.  It is the jury’s province to resolve
conflicts in the evidence.  Wilson, 168 S.W.3d at 819–20.  The jury remains the sole judge of witnesses’
credibility and the weight to be given their testimony; it is free to accept or
reject all or part of a witness’s testimony. 
Golden Eagle Archery, Inc. v.
Jackson, 116 S.W.3d 757, 761 (Tex. 2003). 
Having considered all the evidence, we find legally and factually
sufficient evidence from which the jury could have determined that the parties
agreed that a new contract would take the place of the original.[3]
 See
Bradford, 48 S.W.3d at 754.  The jury’s
finding is supported by more than a scintilla of evidence and is not so against
the great weight and preponderance of the evidence that it is clearly
unjust.  Therefore, the trial court erred
in disregarding the jury’s answer to Question 7, and we reverse that portion of
the judgment. 

Legally and Factually Sufficient Evidence
to Support the Jury’s Findings

            McCarty’s
80% Negligence

            In
her pleadings, McCarty made allegations of violations of the DTPA.  At trial, McCarty argued that Miller’s
negligence was responsible for the damages to her home.  While Miller admitted to damaging a few patio
tiles and some of the brick on the home, he contended that the rest of the damages
were the result of McCarty’s failure to timely repair the foundation problem or
the plumbing leak that allegedly caused it. 


            The
issues were presented to the jury and, in its answers to Questions 1 and 2, the
jury found that the negligence of both McCarty and Miller proximately caused
the damages.  The jury found McCarty to
be eighty percent negligent and Miller to be twenty percent negligent.  In her cross-appeal, McCarty argues that
there is legally and factually insufficient evidence to support the finding
that she was eighty percent negligent.  We disagree. 

            McCarty
knew of the home’s foundation problems as early as November 2005, but she did
not attempt to have them repaired until Miller began work in December 2007.[4]  Several witnesses testified to the condition
of the home prior to Miller beginning work. 
Mike Moon, a plumber, testified that he noticed a “steep” downward slope
in the floor of the home.  Joe Russ, Jr.,
a construction manager for an engineering company that does failure analysis,
foundation repair, and other construction, testified that he noticed a slope in
the floor years prior to McCarty buying the house.  Just prior to Miller’s work, he was in the
home and saw damages consistent with foundation problems:  the floor had a downward slope to it, the
fireplace listed to one side, doors would not open or latch, and there were
deep cracks in the walls and “cracks, rips, [and] tears in the sheetrock” and
wall paper.  

            McCarty
argued that the pre-existing problems with the walls, doors, and molding got
worse after Miller’s work.  McCarty’s
expert architect, Mark Glenn, testified to the home’s condition several weeks
after Miller stopped working on the McCarty residence.  Outside, he saw several large, water-filled
holes[5]
that were dug under the home, broken pipes, “jerry-rigged electrical and gas
connections,” damage to a small portion of the home’s brick exterior, and some
damage to “small patio slabs.”  Inside,
he observed “[m]edium to large sized cracks” in the drywall, doors that were
stuck, and separated crown molding.  Glenn
testified that based on the information he was given at the time of his
inspection, Miller’s work “definitely contributed to the more extensive damage.”  

            Determining
the degree, if any, that the parties’ respective negligence proximately caused
McCarty’s damages is the province of the jury. 
See Pearson v. DeBoer, Inc.,
99 S.W.3d 273, 276 (Tex. App.––Corpus Christi 2003, no pet.); see Smith v. Cent. Freight Lines, Inc.,
774 S.W.2d 411, 412 (Tex. App.––Houston [14th Dist.] 1989, writ denied).  The jury determined that the negligence of
both Miller and McCarty “proximately cause[d] the occurrence in question.”  It is the jury’s role to weigh witnesses’
credibility and determine whether McCarty’s conduct contributed to her damages,
and if so, to what degree.  Golden Eagle Archery, 116 S.W.3d at
761.  Here, the jury could have
reasonably concluded that McCarty’s two-year delay in repairing the foundation
was the predominant proximate cause of the wall cracks, jammed doors, sloped
floor, and other damages, as well as any aggravation thereof.  We find the evidence supporting the jury’s
finding to be more than a scintilla and not so weak or the finding so against
the great weight and preponderance of the evidence that it was clearly wrong
and unjust.  Therefore, we overrule this
point of error. 

            Failure
of McCarty to Comply with Contract

            In
its answer to Question 5, the jury found that McCarty failed to comply with the
contract.  McCarty contends that the
evidence supporting the finding is legally and factually insufficient.  We disagree.

            Hereinabove,
we found sufficient evidence that the parties agreed that a new contract would
take the place of the original contract. 
Under the terms of the modified contract, six additional piers were
required at an additional cost of $1,875.00. 
Miller required McCarty to pay one-half of the additional cost ($937.50)
at the outset.  Miller testified that
McCarty failed to make the required up-front payment.  Even though she denied modifying the
contract, McCarty paid Miller an additional $500.00, but did not pay him the
remaining $437.50.  

            This
issue was contested and a fact issue was presented to the jury, which it
resolved against McCarty and determined that she failed to comply with the
contract.  We conclude the evidence
supporting the finding amounts to more than a scintilla and was not so weak or
the finding so against the great weight and preponderance of the evidence that
it was clearly wrong and unjust.

Issue of Attorney’s Fees

            The
parties stipulated that attorney’s fees would be determined by the trial court
through submitted affidavits.  McCarty’s
affidavit reflected attorney’s fees of $18,135.00, but the trial court awarded
McCarty only $14,000.00 in attorney’s fees. 
McCarty contends that the trial court erred by failing to award the
$18,135.00 in attorney’s fees because the evidence was undisputed and must be
taken as true as a matter of law.  

            The
jury having determined that Miller was excused from performing the contract,
Miller had no obligation to perform.  Had
McCarty recovered in her claim of breach of contract, she would have been
entitled to attorney’s fees.  Tex. Civ. Prac. & Rem. Code Ann. §
38.001(8) (Vernon 2008).  Because Miller
was found by the jury to have been excused from performance, he cannot now be
held liable for attorney’s fees in a suit to enforce a contract, the
performance of which he has been excused. 

            Accordingly,
a discussion of the parameters which guide a trial court in the award of
attorney’s fees is unnecessary and would be superfluous.

            We
overrule this point of error.

            No
point of error was raised as to the correctness of Miller’s quantum meruit
claim and attorney’s fee award.  Because
there is sufficient evidence that Miller’s breach was excused, McCarty did not
prevail on her contract claim, and therefore, is not entitled to either damages
or attorney’s fees.  See Tex. Civ. Prac. & Rem.
Code Ann. §§ 38.001–.006 (Vernon 2008 & Supp. 2010).

            We reverse the awards as to McCarty,
as to both damages and attorney’s fees, and render judgment that McCarty take
nothing.  We further render judgment in
favor of Miller in accordance with the jury’s verdict.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

Date Submitted:          September 8, 2010

Date Decided:             September 21, 2010











[1]By
citing the “greater weight of evidence” as its basis for disregarding the
jury’s answer, the trial court failed to use the proper “no-evidence”
standard.  However, we will affirm the
trial court’s decision if there is less than a scintilla of evidence to support
any of Miller’s theories of excuse.  See Point Lookout W., Inc. v. Whorton,
742 S.W.2d 277, 278 (Tex. 1987) (per curiam); see also In re Acevedo,
956 S.W.2d 770, 775 (Tex. App.––San Antonio 1997, orig. proceeding); Hawthorne v. Guenther, 917 S.W.2d 924,
931 (Tex. App.––Beaumont 1996, writ denied); Luxenberg v. Marshall, 835 S.W.2d 136, 141–42 (Tex. App.––Dallas 1992,
no writ).

 





[2]Miller
also argued that the trial court erred because it failed to apply the proper
standard of “no evidence” when ruling on the motion and it failed to address
all three of Miller’s proffered reasons for excuse.  





[3]The
jury did not specify the grounds upon which they found Miller’s breach to be
excused.  Having found sufficient evidence
supporting one of Miller’s proffered grounds for excuse, we need not address
the others.





[4]In
late 2005 and early 2006, McCarty contacted a repair company, received an
estimate, and agreed to a contract to have her foundation repaired, but McCarty
later canceled that contract. 

 





[5]There
was conflicting testimony regarding whether Miller initially covered the holes
and whether McCarty or anyone else subsequently removed the tarpaulin covers,
causing the holes to fill with water. 
Glenn testified that failing to cover the holes and allowing them to
stay filled with water would aggravate the existing foundation problems.