Gregoria G. KELLY, et al., Appellants,

v.

**DIOCESE OF CORPUS CHRISTI, et al., Appellees.**

No. 13–91–287–CV.

Court of Appeals of Texas, Corpus Christi.

May 14, 1992.

Rehearing Overruled June 18, 1992.

William J. Kolb, Jorge C. Rangel, Rangel & Chriss, Corpus Christi, for appellants.

Ken Dahlberg, Wood, Burney, Cohn & Bradley, Corpus Christi, Mike A. Hatchell, Molly H. Anderson, Ramey, Flock, Jeffus & Crawford, Tyler, for appellees.

Before NYE, C.J., and FEDERICO G. HINOJOSA, Jr. and DORSEY, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Appellants sued appellees for defamation, and the trial court entered judgment on a directed verdict for appellees. Appellants complain that the trial court erred in ordering a directed verdict on their claims of defamation, conspiracy to defame, and intentional infliction of emotional distress. Appellants complain that the trial court also erred in excluding offered evidence as hearsay. We disagree and affirm the judgment of the trial court.

By their first point of error, appellants complain that the trial court erred in directing a verdict for appellees on the issue of defamation. Appellants argue that the trial court adopted an erroneous standard for malice by requiring them to show ill will or improper motive, while malice may be proven by showing that the person uttered a falsity with knowledge of its falsity. Appellants also argue that they presented evidence of every necessary element for a defamation action.

 When we review a directed verdict, we view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all evidence and inferences to the contrary. If we determine that there is any evidence of probative value which raises a material fact issue, then we must reverse the judgment and remand the case for the jury's determination of that issue. *Qantel Bus. Sys. v. Custom Controls,* 761 S.W.2d 302, 303–304 (Tex.1988); *Maxvill–Glasco Drilling Co., Inc. v. Royal Oil & Gas Corp.,* 800 S.W.2d 384, 386 (Tex.App.—Corpus Christi 1990, writ denied); *Saenz v. Starry,* 774 S.W.2d 730, 731 (Tex.App.—Corpus Christi 1989, writ denied). We must affirm a directed verdict, despite the fact that the rationale the trial court assigned for granting it was erroneous, provided it can be supported on another basis. *C.S.R., Inc. v. Indus. Mechanical, Inc.,* 698 S.W.2d 213, 217 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Hutson v. City of Houston,* 418 S.W.2d 911, 914 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.); *Flores v. Logan,* 307 S.W.2d 813, 813 (Tex.Civ. App.—San Antonio 1957, writ ref'd n.r.e.).

A directed verdict under Tex.R.Civ.P. 268 is proper only under limited circumstances, e.g.: where 1) a specifically indicated defect in the opponent's pleading makes it insufficient to support a judgment, or 2) the evidence proves conclusively the truth

of fact propositions which, under the substantive law, establishes the right of the movant, or negates the right of his opponent to judgment; or 3) the evidence is insufficient to raise an issue of fact as to one or more fact propositions which must be established for the opponent to be entitled to judgment. *Texas Employers Ins. Ass'n v. Duree,* 798 S.W.2d 406, 408 (Tex. App.—Fort Worth 1990, writ denied); *Rudolph v. ABC Pest Control, Inc.,* 763 S.W.2d 930, 932 (Tex.App.—San Antonio 1989, writ denied); *Rowland v. City of Corpus Christi,* 620 S.W.2d 930, 932–33 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). Although Rule 268 provides that a motion for instructed verdict shall state the specific grounds therefor, failure to so state is not always fatal, especially if there are no fact issues raised by the evidence. *Texas Employers Ins. Ass'n v. Page,* 553 S.W.2d 98, 102 (Tex.1977). The trial court may properly withdraw a case from the jury and instruct a verdict if there is no evidence to support a material issue. *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex.1986).

 Slander is a defamatory statement orally communicated or published to a third person without legal excuse. *Diaz v. Rankin,* 777 S.W.2d 496, 498 (Tex.App.—Corpus Christi 1989, no writ). Whether the words are reasonably capable of the defamatory meaning the plaintiff attributes to them is a question of law for the trial court. *Carr v. Brasher,* 776 S.W.2d 567, 570 (Tex.1989). Allegedly libelous or slanderous statements must be construed as a whole, in light of surrounding circumstances, based upon how a person of ordinary intelligence would perceive the entire statement. Only when the court determines the complained-of language to be ambiguous or of doubtful import should a jury be permitted to determine the statement's meaning and the effect the statement has on the ordinary listener. *Musser v. Smith Protective Servs., Inc.,* 723 S.W.2d 653, 655 (Tex.1987); *Diaz,* 777 S.W.2d at 499–500.

 If the defendant shows that a privilege exists, the plaintiff must also es-

tablish abuse of that privilege. *Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 335 (Tex.App.—Dallas 1986, no writ); *Houston v. Grocer's Supply Co., Inc.,* 625 S.W.2d 798, 800 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). Since we are reviewing a directed verdict, if our analysis shows that there is any evidence of probative value which raises fact issues of actionable defamatory statements made by the appellees for which no privilege exists, then we must reverse the judgment of the trial court and remand the case for a jury to determine those fact issues.

 A defamatory oral statement may be slander per se or slander per quod. Slander per se is actionable on its face, while slander per quod is actionable only upon pleading and proof of special damages. In general, oral words are not actionable without proof of special damages, unless they impute the commission of a crime or affect the defamed person injuriously in his office, profession or occupation. *Bayoud v. Sigler,* 555 S.W.2d 913, 915 (Tex.Civ.App.—Dallas 1977, writ dism'd). It is not necessary to prove actual damages where the words used are slanderous per se because the law presumes actual damages. *Id.* at 915. Items of special damage must be specifically stated and proved. *Vista Chevrolet, Inc. v. Barron,* 698 S.W.2d 435, 441 (Tex.App.—Corpus Christi 1985, no writ).

In 1987, Paul Kelly was a member of Our Lady of Perpetual Help Catholic Church in Corpus Christi, Texas, when he was befriended by Deacon John J. Feminelli, a transitional deacon preparing for the priesthood. Deacon Feminelli bought Paul gifts, gave him money, and proposed that they have wrestling matches. Paul expressed concern over Deacon Feminelli's actions to his mother, Mrs. Gregoria Kelly, and even told her, "The Deacon wants to fuck me." Mrs. Kelly wrote a letter to her pastor, Father Thomas P. Feeney and reported her son's allegations. The letter stated that a wrestling match had taken place for which Paul was paid $25.00 and requested that Father Feeney "address this problem." Neither Mrs. Kelly nor Paul

ever said that any sexual contact occurred between Paul and Deacon Feminelli.

Father Feeney's superior, Bishop Rene H. Gracida, appointed a commission to investigate the allegations for the purpose of determining whether Deacon Feminelli had committed any act in violation of canon law that would prevent him from being ordained. The commission consisted of Monsignor Louis Kinehman, Monsignor James Tamayo, and Father Feeney. Both Paul and Mrs. Kelly appeared before the commission, and upon an oath of secrecy, they iterated Paul's statements that Deacon Feminelli had given him a guitar, a denim jacket, and cash payments, and that the deacon conditioned the gifts on Paul engaging him in wrestling matches. Paul also stated that the wrestling matches were to take place in a motel. Neither Paul nor Mrs. Kelly ever said that any sexual contact took place, and Paul stated that no wrestling match had occurred. The commission determined that no immoral genital contact had occurred and that no ecclesiastical impediment existed to prohibit Deacon Feminelli's ordination as a priest.

Before appearing before the commission, Mrs. Kelly sent a copy of the letter to Paul's father, Bob Kelly, in Beaumont. While the commission was investigating the allegations, Mr. Kelly contacted Dr. Larry Pirmantgen, a Eucharistic minister and an adult advisor for the Catholic youth ministry. Mr. Kelly read the letter to Dr. Pirmantgen, and Dr. Pirmantgen called Monsignor Kinehman to discuss the allegations. Monsignor Kinehman told Dr. Pirmantgen that he could neither confirm nor deny the existence of the letter but could state that an investigation was taking place. A week later, Monsignor Kinehman called Dr. Pirmantgen and stated that he believed the letter had been fabricated, that there was nothing in the letter to prevent Deacon Feminelli's ordination, and that he believed the letter was not true. Dr. Pirmantgen testified that Monsignor Kinehman said the entire letter was false and that Monsignor Kinehman used the word "fabricated" when referring to allegations in the letter about sexual misconduct.

Before Deacon Feminelli's ordination, Father Bill Elliott was approached by two parishioners who inquired about the letter. Even though Father Elliott had no prior knowledge of the letter or the investigation, he called Monsignor Kinehman because he was concerned about the allegations. Monsignor Kinehman told him that Paul had recanted the story.

Apparently, by this point, many parishioners had become aware of the investigation of Deacon Feminelli. The Diocese's personnel board met to discuss the ordination and to prepare for anticipated protests. At this meeting, according to Father Richard Shirley, Bishop Gracida stated that he had a letter of apology from Paul and that Paul admitted that he had made up the story. The ordination took place as scheduled. Spectators protested and were removed, and another group rose and applauded to show their support of Father Feminelli. This unfortunate series of occurrences led Father Feminelli to file suit against a group of parishioners for defamation and for an injunction, prohibiting them from publishing the letter Mrs. Kelly originally wrote to Father Feeney. The injunction issued, but was set aside by this court because it violated the parishioners' rights under U.S. Const. amends. I and XIV and Tex. Const. art. I, § 8. *Pirmantgen v. Feminelli,* 745 S.W.2d 576 (Tex. App.—Corpus Christi 1988, no writ). After we set aside the injunction, Father Feminelli dismissed his defamation action.

The Kellys filed suit on April 12, 1988, for defamation and conspiracy to defame. The Kellys alleged in their original petition that they had suffered actual damages for mental pain and anguish, but they did not allege that they had suffered any special damages. They subsequently amended their petition and added a claim for intentional infliction of emotional distress. After discovery was completed, appellees filed a motion for sanctions alleging the Kellys failed to disclose an expert witness who had treated Paul Kelly for emotional distress. The trial court found the Kellys had violated the discovery rules and sanctioned them by striking their amended petition

and ordering that they proceed to trial on their original petition.

After the Kellys rested, the appellees moved for a directed verdict. Appellees' motion was granted on all claims and a take-nothing judgment was rendered for appellants.

The appellees argued for a directed verdict on the defamation charge on the grounds that the appellants failed to prove any ill will or improper motive on the part of the appellees. The appellees also argued that the statements, if made, were privileged. The trial court granted the appellees' motion for directed verdict without stating, either from the bench or in the judgment, the reasons for granting the motion.

 Statements made in the context of a church investigatory proceeding are protected by a qualified privilege. *Holt v. Parson*, 23 Tex. 9, 21 (1859); *Cresswell v. Pruitt*, 239 S.W.2d 165, 168 (Tex.Civ. App.—Eastland 1951, no writ).[1] If a qualified privilege exists, the defamed party has the burden of establishing that the privilege has been abused. *Ramos*, 711 S.W.2d at 335. A qualified privilege is abused when the person uttering the statement knows the matter to be false or does not act for the purpose of protecting the interest for which the privilege exists. *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex.1987); *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 924 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.).

 The record includes evidence that the appellees uttered false statements impugning the Kellys' reputation with knowl-edge of the falsity of those statements. Their qualified privilege to speak in defense of Father Feminelli existed because the Diocese, the Bishop, and the commission members had the right to answer parishioners who were concerned over the conduct of a man about to be ordained a priest. This privilege would protect statements that no sexual contact occurred and statements that they did not believe the Kellys were telling the truth, if, in fact, they did not believe the Kellys. The appellees, however, would exceed the scope of their privilege if they falsely stated that the Kellys recanted their story, admitted to fabrication, or apologized to Father Feminelli for making baseless accusations, if appellees knew that such statements were false.

Appellees Kinehman, Feeney, Gracida and Tamayo all testified that they knew the falsity of the statements that the Kellys recanted their story, admitted fabrication, or apologized to Father Feminelli for the accusations they made. All of the appellees denied making any such statements. The Kellys, however, presented witnesses who testified that Monsignor Kinehman, Father Feeney and Bishop Gracida made such statements.

The parties are in accord that the alleged utterances are false; they disagree on whether the appellees actually spoke the words that appellants' witnesses attributed to them. A material fact issue, whether the appellees spoke the utterances attributed to them, exists. The evidence that the appellees spoke the utterances also raises a material fact issue that the utterances were spoken to third persons. If the appel-

---

1. The Court in *Holt* did not use the term "qualified privilege," but it discussed the extent of the privilege in the following language:

 To rebut and entirely remove the evidence of malicious intent, where the writing is both defamatory and false, upon the ground of a privileged communication, it must appear: 1st. That the party had a right, or was under some obligation, to give the information which was believed to be true; 2nd. The mode and style of communication must not contain intrinsic evidence of malicious intent over and beyond what is reasonably necessary and proper in conveying the information;

 3rd. It must be free from attendant and concomitant extrinsic circumstances showing a malicious intent. *Holt v. Parsons*, 23 Tex. 9, 21 (1859).

 The limitations that the *Holt* Court placed on the privilege parallel the current limitations on a qualified privilege. Qualified privileges arise from the situation in which the statement is published, but the privilege is punctured by abuse. *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex.1987). The most notable change in law of privileges in the last 143 years is the change in the definition and proof of malice.

lees in fact spoke the alleged utterances, they did so with knowledge of their falsity and abused any applicable qualified privilege. A review of the record indicates that evidence, probative of the appellees' utterances of a defamatory nature, exists.

We must next determine whether the statements attributed to the appellees are actionable as a matter of law. The statements that appellees are alleged to have uttered imputed dishonesty to the Kellys, accusing them of fabricating and recanting their allegations against Father Feminelli. Such statements are defamatory, for to impugn the veracity of a person is to defame him. *State Medical Ass'n of Tex. v. Comm. for Chiropractic Educ., Inc.*, 236 S.W.2d 632, 634 (Tex.Civ.App.—Galveston 1951, no writ).

Compensatory damages allowable for defamation are either general or special. General damages are those that naturally, proximately, and necessarily result from the slander. *Houston Belt & Terminal Ry. Co. v. Wherry*, 548 S.W.2d 743, 753 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). Injuries to character or reputation, injuries to feelings, mental anguish and other like wrongs and injuries incapable of money valuation are general damages. *Vista Chevrolet, Inc.*, 698 S.W.2d at 441.

The general rule regarding oral statements, however, is that they are not actionable without proof of special damages, unless they impute to another the commission of a crime or affect a person injuriously in his office, profession or occupation. *Stearns v. McManis*, 543 S.W.2d 659, 662 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ dism'd); *Arant v. Jaffe*, 436 S.W.2d 169, 176 (Tex.Civ.App.—Dallas 1968, no writ). The statements that appellees are alleged to have uttered, do not impute to appellants the commission of a crime or affect appellants injuriously in their office, profession or occupation. The statements are not slanderous per se and are, therefore, not actionable without pleading and proof of special damages.

The Kellys' original petition asked for general damages for the shame, humilia-

tion, mental pain and anguish suffered by Paul Kelly and Mrs. Kelly. The original petition also asked for damages for the mental pain and anguish suffered by Mr. and Mrs. Kelly. The record reflects that the Kellys pleaded no special damages in their original petition, offered no trial amendment, and proved no special damages. Therefore, any defamatory statements that appellees may have uttered are not actionable under the laws of the State of Texas. We overrule appellants' first point of error.

By their second point of error, appellants complain that the trial court erred in instructing a verdict on their claim of intentional infliction of emotional distress. As we have previously stated, the trial court sanctioned the Kellys by striking their amended petition and ordering that they proceed to trial on their original petition. The Kellys did not plead intentional infliction of emotional distress in their original petition and did not request a trial amendment to add this cause of action to their pleadings. The Kellys have not raised an appropriate point of error challenging the discovery sanctions imposed by the trial court. Any discovery sanctions error has, therefore, been waived. *In re R.L.H.*, 771 S.W.2d 697, 702 (Tex.App.—Austin 1989, writ denied); *Langston v. Eagle Publishing Co.*, 719 S.W.2d 612, 625 (Tex.App.—Waco 1986, writ ref'd n.r.e.); *Cameron Co. v. Velasquez*, 668 S.W.2d 776, 784 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The claim of intentional infliction of emotional distress was not before the trial court, and arguments not pleaded and proved at the trial court are waived on appeal. *S & D Group, Inc. v. Talmas*, 710 S.W.2d 680, 683 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). We overrule appellants' second point of error.

By their third point of error, appellants complain that the trial court erred in instructing a verdict on their claim of civil conspiracy. The essential elements of a civil conspiracy are: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of minds on the object or course of

action; 4) one or more unlawful, overt acts; and 5) damages as the proximate result. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983); *Adolf Coors Co. v. Rodriguez*, 780 S.W.2d 477, 486 (Tex. App.—Corpus Christi 1989, writ denied). The gist of a cause of action for civil conspiracy is the damage from the commission of a wrong which injures another and not the conspiracy itself. *Coors*, 780 S.W.2d at 487.

An actionable conspiracy must consist of wrongs that would have been actionable against the conspirators individually. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex.1963). Generally, if an act by one person cannot give rise to a cause of action, then the same act cannot give rise to a cause of action if done pursuant to an agreement between several persons. *Schoellkopf v. Pledger*, 778 S.W.2d 897, 900 (Tex.App.—Dallas 1989, writ denied).

▇▇▇ The alleged utterances are not actionable in absence of pleading and proof of special damages. Since there are no wrongs that are actionable against the appellees, the cause of action for conspiracy does not lie. We overrule appellants' third point of error.

▇▇▇ By their fourth point of error, appellants complain that the trial court excluded, as hearsay, a newspaper article offered as evidence of their defamation and conspiracy claims. This point of error is not preserved, as the Bills of Exception contained in the record do not include an objection and ruling. TEX.R.APP.P. 52(b). Each bill of exception contains only the offer of proof and the court's ruling. The basis of the objection is not included. We cannot say that the newspaper article was excluded as hearsay or as merely being prejudicial. The appellants bear the burden of presenting a record sufficient to preserve error. We overrule appellants' fourth point of error.

We affirm the judgment of the trial court.