

NUMBER 13-09-00421-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MARIA ESTER SALINAS,**                                     **Appellant,**

**v.**

**NORBERTO SALINAS,**                                          **Appellee.**

---

### On appeal from the 206th District Court of Hidalgo County, Texas.

---

# MEMORANDUM OPINION ON REMAND

### Before Justices Garza, Benavides and Wittig[1]
### Memorandum Opinion by Justice Garza

A jury found appellant, Maria Ester Salinas ("Ester"), liable for slander and

awarded appellee, Norberto Salinas ("Norberto"), $30,000 in damages. By six issues,

---

[1] Justice Linda Reyna Yañez was a member of the panel at the time this case was initially argued and submitted for decision in 2010. However, Justice Yañez could not participate in deciding the case, *see* TEX. R. APP. P. 41.1, and retired Justice Don Wittig was assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 74.003 (West Supp. 2004).

Ester challenges the trial court's judgment on the verdict. We reverse and render.

## I. BACKGROUND

Norberto is the mayor of Mission, Texas. Ester is a self-described community activist representing the interests of residents affected by chemical contamination at the former Hayes-Sammons pesticide plant in Mission. After years of research and investigation, Ester discovered that Mission residents were suffering "abnormal" health problems which she believed were caused by chemicals emanating from the Hayes-Sammons plant. Ester believed that city officials, including Norberto, were negligent in failing to notify the affected residents that their land was contaminated and in failing to arrange for the residents to be relocated from the contaminated areas.

At an August 25, 2005 Mission city council meeting, at which Norberto was present, Ester made the following statement:

> Good afternoon Mayor and Members of the Council and public. Maria Ester Pena Salinas, we the people from the super fund areas demand justice, justice for all where is it[?] Congratulation[s] to Miss Flores and I wish the five hundred . . . babies who were born died [sic] also had that opportunity to live and breath[e] unfortunately five hundred . . . of our babies were lost and nobody seems to care and if they do care there is no justice. It's unfortunate what that is [sic] has taken decades for EPA and all entities to come in and say that they are going to see if there is any contaminations [sic] stop play[ing] games with our lives. We are the people from the super funds and it[']s time for[] relocation. You[] all paid an ex city [council] member a hundred and eighty-five thousand[] for him to resign[,] well we want to be relocated. You are paying for additional council where there is TL TML funds[,] why did you use those funds, why did you have to hire someone at two hundred dollars an hour[? S]ome of my people got a hundred and twelve dollars and you know what justice day will come and some of you will be judged for the way you have stolen and lied and killed[.] But yet you continue to act as if you are in denial and I know you are timing me sir.

Norberto sued Ester for defamation on the basis of this statement.[2]

---

[2] Norberto intervened in an existing defamation suit against Ester brought by Pat Townsend, a

Subsequently, in October 2008, Ester made the following statement while being interviewed on a local Telemundo television program: "So, we have to go fight in court because even the mayor in La Joya told me that Norberto Salinas went to talk to him to say that they were going to kill me." Norberto amended his pleadings to include this statement as an additional basis for his defamation claim. Norberto also later added to his defamation claim an allegation that Ester "called him a drug dealer and said th[at] he is politically corrupt."

After trial, the trial court found as a matter of law that all three statements—the city council statement, the Telemundo statement, and the drug dealer statement—were defamatory per se as to Norberto. The jury then found that the statements were false and that Ester made them with actual malice. The jury concluded that the city council statement and the drug dealer statement caused Norberto to suffer mental anguish; however, it found that the Telemundo statement did not cause Norberto to suffer mental anguish. The jury awarded $30,000 to Norberto for past mental anguish "that resulted from the occurrence in question."

On appeal, Ester contended that: (1) her speech was constitutionally protected; (2) her statements were not, as a matter of law, unambiguous defamatory statements of fact; (3) Norberto did not prove mental anguish; (4) Norberto did not prove that her statements were made with actual malice; (5) there was a fatal variance between the pleadings and the proof; and (6) the trial court erred in admitting certain evidence. We initially affirmed the judgment awarding damages to Norberto. *Salinas v. Townsend*,

---

former Mission mayor and city manager. Townsend prevailed on his defamation claim at trial and was awarded $10,000 in damages. However, we reversed the judgment in favor of Townsend. *Salinas v. Townsend*, 365 S.W.3d 368, 380–82 (Tex. App.—Corpus Christi 2011), *rev'd on other grounds by Salinas v. Salinas*, 365 S.W.3d 318 (Tex. 2012) (per curiam). The Texas Supreme Court did not disturb our judgment as it relates to Townsend. 365 S.W.3d at 320 n.1.

365 S.W.3d 368, 380–82 (Tex. App.—Corpus Christi 2011), *rev'd*, 365 S.W.3d 318 (Tex. 2012) (per curiam).  In particular, we concluded that:  (1) the mere fact that one of the allegedly defamatory statements was made during an official city government proceeding does not shield Ester from liability; (2) the Telemundo statement was an unambiguous statement of fact, was defamatory per se, and was made with actual malice; (3) Norberto did not need to prove mental anguish because the law presumes actual damages where the words used are slanderous per se; (4) the variance between the pleadings and the proof was not substantial, misleading, or prejudicial; and (5) the trial court did not err by admitting evidence of a "fee sharing agreement" Ester had entered into with an attorney.  365 S.W.3d at 379–87.  We did not address whether the 2005 city council statement or the drug dealer statement were properly categorized as defamatory per se, nor did we address whether those statements were made with actual malice, "because at least one of the grounds upon which the jury based its damage award [i.e., the Telemundo statement] was legally valid," and Ester "did not object to the broad-form damages question on the basis that more than one such question should have been submitted . . . ."  *Id.* at 385 (citing *Wackenhut Corr. Corp. v. De La Rosa*, 305 S.W.3d 594, 619–21, n.26 (Tex. App.—Corpus Christi 2009, no pet.)).

The Texas Supreme Court reversed, concluding that the judgment awarding $30,000 in mental anguish damages could not be sustained solely on the basis of the Telemundo statement because the jury found that Norberto suffered no mental anguish as a result of that statement.  365 S.W.3d at 320.  The Court further concluded that, "even if some mental anguish can be presumed in cases of defamation per se, . . . the law does not presume any particular amount of damages beyond nominal damages."

4

*Id.*[3] The Court remanded to us to determine "[w]hether the judgment should stand based on the other two allegedly defamatory statements . . . ." *Id.* at 321.

## II. DISCUSSION

By her second issue on appeal, Ester argues that the trial court erred by finding the statements to be per se defamatory. By her third issue, she contends that there was legally and factually insufficient evidence to support the jury's finding that Norberto suffered mental anguish. By her fourth issue, Ester contends that legally and factually insufficient evidence was adduced at trial to establish that she made the statements with actual malice. We will consider these issues as they apply to the 2005 city council statement and the drug dealer statement.

For an oral statement to constitute slander per se, it must fall within one of four categories: (1) imputation of the commission of a crime; (2) imputation of a loathsome disease; (3) injury to a person's office, business, profession, or calling; or (4) imputation of sexual misconduct. *Minyard Food Stores, Inc. v. Goodman*, 50 S.W.3d 131, 140 (Tex. App.—Fort Worth 2001), *rev'd on other grounds*, 80 S.W.3d 573 (Tex. 2002). If

---

[3] In concluding that only nominal damages are presumed in cases of defamation per se, the Court appears to have overruled prior case law stating explicitly that no proof of any actual damages is required in such cases. *See, e.g., Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984) (affirming award of $1,500 in mental anguish damages because "[t]he law presumes a statement which is libelous per se defames a person and injures his reputation"); *Knox v. Taylor*, 992 S.W.2d 40, 60 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (rejecting challenge to sufficiency of evidence supporting mental anguish damages award because "[i]n the recovery on a claim of defamation per se, the law presumes actual damages and no independent proof of damages to reputation or of mental anguish is required"); *Mitre v. Brooks Fashion Stores, Inc.*, 840 S.W.2d 612, 620 (Tex. App.—Corpus Christi 1992, writ denied) ("[I]n a case of defamation per se, the law presumes actual damages and no independent proof of damages to reputation or of mental anguish is required."), *overruled on other grounds by Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994); *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 922 (Tex. App.—Corpus Christi 1991, writ dism'd) (rejecting a challenge to the sufficiency of the evidence supporting award of $19,791.66 in mental anguish damages because, "[w]hen words are slanderous per se, the law presumes actual damage"); *see also Groden v. Allen*, 279 Fed. Appx. 290, 295 (5th Cir. 2008) (rejecting appellant's challenge to sufficiency of the evidence supporting damages award "[b]ecause this case involves defamation per se" and "no proof of actual damages was required").

5

the statement is not slanderous per se, the plaintiff must plead and prove special damages—i.e., some form of pecuniary or economic loss—in order for the statement to be actionable as slander per quod. *Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 94 (Tex. App.—Corpus Christi 1992, writ dism'd w.o.j.). Norberto has not alleged or requested special damages, nor has he asserted that Ester's statements imputed disease or sexual misconduct, or injured his office, business, profession, or calling. Therefore, Ester's statements will be actionable only if they are deemed to be slanderous per se by virtue of having imputed to Norberto the commission of a crime. *See Minyard Food Stores, Inc.*, 50 S.W.3d at 140 (listing categories of statements that are per se defamatory); *Kelly*, 832 S.W.2d at 94 (slander plaintiff must plead and prove special damages in order to recover for defamation per quod); *Mitre v. Brooks Fashion Stores, Inc.,* 840 S.W.2d 612, 619 (Tex. App.—Corpus Christi 1992, writ denied), *overruled on other grounds by Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994) (noting that a statement that unambiguously and falsely imputes criminal conduct to plaintiff is defamatory per se). A statement will constitute slander per se if an ordinary person would draw a reasonable conclusion that the complaining party was being accused of violating of some criminal law. *Mitre,* 840 S.W.2d at 620.

### 1. City Council Statements

We first consider Ester's statement at the 2005 city council meeting. At this meeting, Ester, addressing Norberto and the city council, stated in part that "some of you will be judged for the way you have stolen and lied and killed."

We must evaluate the nature of a statement in light of all surrounding circumstances. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000);

6

*Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654–55 (Tex. 1987). Here, those circumstances include the fact that Ester was speaking in a public forum about an issue—and concerning a public official—with which the audience was intimately familiar. Under such circumstances, even assuming that Ester's remarks unambiguously referred to Norberto and expressed objectively verifiable facts about him, we do not believe that a person of "ordinary intelligence" would have concluded from those words that Norberto was being accused of violating a criminal law. *See Mitre,* 840 S.W.2d at 620. That is, an ordinary person hearing Ester's remarks would not have understood them as meaning that Norberto actually engaged in theft or murder; instead, such a person would have understood the remarks as harsh, acerbic—and possibly unfounded—criticisms of Norberto's performance as mayor. *See New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004) (citing *N. Y. Times Co.*, 376 U.S. at 270) (recognizing the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials").

As we stated in our 2011 opinion:

[C]ertain public officials—namely, those in policymaking positions such as mayor—are prone to receiving hyperbolic criticism precisely because of the power they wield and the often momentous consequences of their official decisions. For example, a citizen may accuse a legislator of being a "murderer" because that legislator supports the death penalty. There, the citizen is relying on an objective fact—that the legislator supports a policy that may lead to the deaths of individuals—but is embellishing that fact to reflect the citizen's belief that the legislator bears personal responsibility for any lives lost as a result of that policy. In any case, no reasonable person listening to the citizen's statement could believe that the legislator had just been accused of committing a crime. Instead, an ordinary person would believe that the citizen merely disagreed with the

7

legislator's policy choices and chose to express that disagreement in unusually stark terms. This analogy also holds for matters less weighty than the morality of capital punishment—for example, a citizen may call a county commissioner a "thief" because he or she advocates higher taxes; or, a citizen may call a judge a "crook" because of some perceived bias. In both cases, the citizen uses words that, under normal circumstances, imply the commission of a crime. But, given the public status of the individuals made the subject of those statements, no ordinary listener— i.e., no one that "exercises care and prudence"—would reasonably believe that the speaker was actually making accusations of criminal behavior. Without any elaboration, such remarks instead reflect only the citizen's strong disagreement with the officials' lawful exercise of discretion in their role as public servants.

*Salinas*, 365 S.W.3d at 381–82 (citations omitted).

Given Norberto's status as mayor, and given the well-understood context surrounding the Hayes-Sammons affair, no ordinary listener would have perceived Ester's remarks at the 2005 city council meeting as having charged Norberto with committing crimes. The only reasonable conclusion an ordinary listener could have drawn from those remarks is that Ester fiercely disapproved of how Norberto performed his official duties with regard to the chemical contamination at the Hayes-Sammons plant, and that she believed that severe harm resulted from his official decisions. The remark—whether true or false—could not have been reasonably understood by an ordinary listener as having charged Norberto with criminal behavior.

We therefore conclude that the trial court erred in classifying Ester's 2005 statement as slanderous per se. Because Norberto did not plead or prove special damages, the trial court was bound to dismiss Norberto's claim regarding this

8

statement. *See Kelly*, 832 S.W.2d at 94; *Stearns*, 543 S.W.2d at 662. We sustain Ester's second issue as it relates to this statement.[4]

### 2. "Drug Dealer and Corrupt Politician"

We next address the statements found to be made by Ester to the effect that "Norberto Salinas is a drug dealer and corrupt politician."[5]

The evidence related to this allegation included testimony by Jose Montes, a Mission resident. Montes testified that Ester, upon seeing Norberto's campaign poster on Montes's house, told Montes that Norberto was "a big rat." When Montes was asked at trial what he understood Ester to mean by those words, he stated that "a big rat is— well, I understand it's like a—somebody big and like—well, you know, control of something, you know. . . . Well, like somebody, you know—rat means like somebody stealing or something." There was no other evidence adduced as to the meaning of the words "big rat."

Domingo De La Garza, another resident of Mission, testified that he is close friends with Norberto and the two have known each other since they were children. De La Garza stated that he knew Ester "because I used to work at the H-E-B in Mission and I used to—and I had the job of picking up the carts that people would take to their

---

[4] In light of our conclusion that Ester's August 25, 2005 statement was not defamatory per se, we need not address Ester's third or fourth issues, challenging the sufficiency of the evidence as to mental anguish and actual malice, as it relates to that statement. *See* TEX. R. APP. P. 47.1

[5] We note here, as we did in our 2011 opinion, that no witness testified that Ester ever used the words "corrupt politician" to describe Norberto. Ester's counsel objected at trial to the submission of jury charge question number ten, which asked whether Ester "made" the statement that "Norberto Salinas is a drug dealer and corrupt politician," on this basis. However, the trial court overruled the objection, and Ester does not challenge that ruling on appeal, nor does she challenge the sufficiency of the evidence supporting the jury's finding that she made the statement. Accordingly, we may not consider the issue. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) ("[T]he courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error.") (citing *Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990); *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 210 (Tex. 1990)).

9

homes. And I used to pick up the carts in front of [Ester's] home every third or fourth day." According to De La Garza, Ester once called Norberto a "drug dealer" at a grocery store in front of "six or seven" other people, and she "told me loud enough for people to hear what she was telling me." De La Garza testified that Ester "used to call [Norberto] a drug [l]ord, she told me that two or three times."[6] Considering the circumstances, we believe that an ordinary listener would have understood this statement as accusing Norberto of having committed a crime. *See, e.g.*, TEX. HEALTH & SAFETY CODE ANN. §§ 481.001–.314 (West Supp. 2011) (Texas Controlled Substances Act). Accordingly, the trial court did not err in classifying this statement as per se defamatory.[7]

Moreover, Ester testified that she did not believe Norberto is a drug dealer. This evidence was significant enough to allow the jury, having already concluded that Ester made the statement, to form a firm belief or conviction that she knew the statement was false. Accordingly, the evidence was legally and factually sufficient to establish that Ester acted with actual malice in making the statement. *See Isaacks*, 146 S.W.3d at 162 (quoting *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex. 2000))

---

[6] Although De La Garza did not initially volunteer that Ester called Norberto a "drug *dealer*," he indicated later in his testimony that Ester did in fact use those words:

> Q. How many times, again, without guessing and without going through every single instance, how many times do you remember [Ester] saying to you in front of other people that [Norberto] Salinas was a drug dealer?
>
> A. Well, that I can recall, only about three or four times.

[7] Because we have concluded that the accusation of being a "drug dealer" is slanderous per se—and because Ester does not contend on appeal that the trial court erred by submitting the statement "Norberto Salinas is a drug dealer and corrupt politician" to the jury—we need not address whether the accusation of being a "corrupt politician" is also slanderous per se. That is, even if we were to find that the accusation of being a "corrupt politician" is not slanderous per se, the phrase as submitted to the jury would still constitute slander per se because it included an accusation that Norberto is a "drug dealer."

(noting that, in defamation cases, "'actual malice' requires proof that the defendant made the statement 'with knowledge that it was false or with reckless disregard of whether it was true or not'"). We overrule Ester's second and fourth issues as they relate to the "drug dealer" statement.

However, given the Texas Supreme Court's ruling that "the law does not presume any particular amount of damages beyond nominal damages" in defamation per se cases, *Salinas*, 365 S.W.3d at 321, our inquiry is not complete. We must next determine if the evidence was legally sufficient to support the jury's award of $30,000 in past mental anguish damages based on the "drug dealer" statement alone. An award of mental anguish damages will survive a legal sufficiency challenge only if the plaintiff has introduced "direct evidence of the nature, duration, and severity of [his] mental anguish, thus establishing a substantial disruption in [his] daily routine," or other evidence of "a high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embarrassment, or anger." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). "Courts should 'closely scrutinize' awards of mental anguish damages." *Gunn Infiniti v. O'Byrne*, 996 S.W.2d 854, 860 (Tex. 1999) (quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997)). "Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded." *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996).

Norberto's wife, Maria Yvonne Salinas ("Maria"), testified that Norberto was "highly embarrassed" and "became very withdrawn" because of Ester's remarks. Maria stated that Norberto "became very introverted" and no longer attended the "city

11

Christmas party" because he was embarrassed and "didn't want to face the scrutiny or the questions any more." She stated that Norberto considered not running for re-election in 2007 because of the embarrassment.[8] He eventually ran for mayor, and won, but "[i]t was a very difficult race because he was embarrassed." Norberto himself testified that "[i]t's pretty embarrassing, you know, being that I'm a strong man, you know, I really feel that I've been able to deal with it very well." This was the entirety of the evidence adduced as to mental anguish suffered by Norberto.

We conclude that this evidence was insufficient to support the jury's award of $30,000 in mental anguish damages. Maria's testimony established that Norberto felt embarrassed because of Ester's remarks, and that Norberto's behavior changed somewhat as a result of that embarrassment, but there was no evidence adduced that Ester's remarks caused a "substantial disruption in [Norberto's] daily routine." *See Parkway Co*, 901 S.W.2d at 444. Moreover, we find no evidence that Norberto suffered "a high degree of mental pain and distress" beyond "mere worry, anxiety, vexation, embarrassment, or anger," *see id.,* especially in light of Norberto's admission that he has "been able to deal with [the embarrassment] very well."

The evidence was legally insufficient to support the jury's award of $30,000 in mental anguish damages based upon the "drug dealer" statement. Ester's third issue is sustained as it relates to that statement.

### III. CONCLUSION

Neither the 2005 city council statement nor the "drug dealer" statement were valid grounds upon which the $30,000 mental anguish damages award could have been

---

[8] We note that Norberto has since been twice re-elected as mayor, in 2007 and 2010. *See* City of Mission, Election Results, http://www.missiontexas.us/city-departments/city-secretary/elections (last visited Sept. 5, 2012).

based.  Accordingly, the judgment of the trial court awarding such damages is reversed,

and we render judgment that Norberto take nothing by way of his claims against Ester.


                                               _____

                                               DORI CONTRERAS GARZA
                                               Justice

Delivered and filed the
13th day of September, 2012.